EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., et als., Luis Marzán Oyola, Lloyds S. Flores Báez, Toyota Credit y otros<br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br>Peticionario | Certiorari<br><br>2016 TSPR 52<br><br>195 DPR \_\_\_\_ |

Número del Caso: CC-2012-767


Fecha: 18 de marzo de 2016


Tribunal de Apelaciones:

       Región Judicial de Bayamón


 Oficina de la Procuradora General:

       Lcda. Margarita Mercado Echegaray
       Procuradora General

       Lcda. Karla Pacheco
       Subprocuradora General

       Lcda. María Astrid Hernández Martin
       Procuradora General Auxiliar

       Lcda. Ana Garcés Camacho
       Procuradora General Auxiliar


       Lcda. Lizette Mejías Avilés
       Procuradora General Auxiliar


Abogado de la parte Recurrida:
<u>Triple SSS</u>

       Lcdo. Edgardo Rosario Madera

Abogado de la parte Recurrida:
BBVA

                    Lcdo. Luis Rivera Martínez
                    Lcda. Francis T. Pagán Martínez
                    Lcda. Keila M. Ortega Casals
                    Lcda. Annette M. Prats Palerm


Materia: Sentencia con Opiniones de Conformidad y Opinión Disidente


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., et als., Luis Marzán Oyola, Lloyds S. Flores Báez, Toyota Credit y otros Recurridos | *Certiorari* | |
| | CC-2012-0767 | |
| v. | | |
| Estado Libre Asociado de Puerto Rico Peticionario | | |

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de marzo de 2016.

El 5 de enero de 2011 el Estado ocupó y confiscó un vehículo de motor presuntamente utilizado en violación a los Arts. 5.04 y 5.06 de la Ley de Armas de Puerto Rico.[1] Basado en estos mismos hechos, el Estado presentó cargos criminales en contra del Sr. Luis Marzán Oyola y

---

[1] Art. 5.04 y Art. 5.06 de Ley Núm. 404-2000, Ley de Armas de Puerto Rico. (25 LPRA sec. 458c y 458e). Véase, Caso CC-2012-0767, 2da Pieza, Apéndice, *Carta de notificación de la Junta de Confiscaciones del Departamento de Justicia del Estado Libre Asociado de Puerto Rico,* pág. 557.

el Sr. Teddy Báez Rijos.[2] En el caso del señor Marzán Oyola los cargos fueron desestimados porque la vista preliminar no se celebró dentro de los sesenta días de su arresto, según dispone la Regla 64(n)(6) de Procedimiento Criminal.[3] Mientras que los cargos contra el señor Báez Rijos fueron desestimados porque éste no fue presentado a juicio dentro de los ciento veinte días siguientes a la lectura de la acusación, conforme a la Regla 64(n)(4) de Procedimiento Criminal.[4]

Posterior a este desenlace, y como parte de las demandas civiles de impugnación de confiscación previamente presentadas y consolidadas,[5] tanto Reliable Financial Services y Triple-S Propiedad Inc.,[6] como el señor Marzán Oyola, presentaron sus respectivas solicitudes de sentencia sumaria.[7] En éstas alegaron, en esencia, que el Tribunal debía anular la confiscación

---

[2] Al Sr. Luis Marzán Oyola se le presentaron cargos por violación a los Arts. 5.04, 5.06 y 6.01 de la Ley de Armas de Puerto Rico, supra. (25 LPRA secs. 458c, 458e y 459). Mientras que contra el Sr. Teddy Báez Rijos se presentaron cargos por violación a los Arts. 5.04, supra, y 5.10 de la Ley de Armas de Puerto Rico. (25 LPRA sec. 458i).

[3] Regla 64(n)(6) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64. Véase, Caso CC-2012-0767, 2da Pieza, Apéndice, Vista Preliminar Regla 23 de Procedimiento Criminal – Resolución, pág. 552.

[4] Regla 64(n)(4) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64. Véase, Caso CC-2012-0767, 2da Pieza, Apéndice, Resolución, pág. 553.

[5] Véase, Caso CC-2012-0767, 2da Pieza, Apéndice, Demanda, págs. 517-519; véase, además, Demanda impugnación de confiscación, págs. 521-523; y Orden de consolidación, págs. 536-537.

[6] Reliable Financial Services, Inc. fue la entidad que financió el vehículo de motor confiscado. Mientras que Triple-S Propiedad es la compañía aseguradora del vehículo de motor por la suma adeudada que tenía una póliza de seguros expedida para cubrir el riesgo de confiscaciones. Véase, Caso CC-2012-0767, 2da Pieza, Apéndice, Demanda, págs. 517-518.

[7] Íd., Moción de Sentencia Sumaria, págs. 554-556; Moción en Sentencia Sumaria, págs. 579-582.

realizada, como consecuencia del resultado favorable obtenido por los imputados en el caso penal. Evaluada la controversia, el 23 de enero de 2012 el Tribunal de Primera Instancia emitió una Sentencia en la que declaró *ha lugar* la solicitud de dictamen sumario y ordenó la devolución del vehículo confiscado.[8] De acuerdo al foro primario, no procedía la aplicación de la nueva normativa establecida en la Ley Uniforme de Confiscaciones de 2011 porque ese no era el derecho vigente al momento de la confiscación. Por lo tanto, concluyó que desestimados los cargos criminales procedía la anulación de la confiscación realizada.[9]

Inconforme con esta determinación, el Estado acudió ante el Tribunal de Apelaciones.[10] El 13 de julio de 2012 el foro apelativo intermedio emitió una Resolución en la que se limitó a expresar, en lo que a la controversia ante este Tribunal Supremo respecta, que confirmaba "la sentencia sumaria mediante la cual el TPI determinó que ante la confiscación indebida y en ausencia de otra prueba que justificara la confiscación realizada, procedía la devolución del vehículo".[11] En desacuerdo con ello, el Estado acudió ante este Tribunal para solicitar revisión de la Sentencia únicamente en lo que concierne al caso

---

[8] Íd., *Sentencia*, págs. 469-480.

[9] Íd.

[10] Véase, Caso CC-2012-0767, 2da Pieza, Apéndice, *Apelación Civil*, págs. 436-466.

[11] Íd., *Sentencia*, pág. 79.

KLAN2012-00497.[12] Denegada la petición de *certiorari* presentada y evaluada la correspondiente solicitud de reconsideración, el Tribunal reconsideró su determinación y expidió el recurso peticionado.[13]

El 1 de marzo de 2016, el Tribunal celebró una vista oral en la que todas las partes tuvieron la oportunidad de exponer sus respectivos planteamientos. Ahora bien, luego de considerar detenidamente los escritos presentados por las partes, así como los argumentos planteados por éstas durante la vista oral, los Jueces y las Juezas de este Tribunal se encuentran **igualmente divididos** en cuanto a sus votos. Por lo tanto, y conforme a la Regla 4, inciso (a) del Reglamento de este Tribunal Supremo,[14] se confirma el dictamen recurrido del Tribunal de Apelaciones,

---

[12] La Sentencia del Tribunal de Apelaciones recurrida por el Estado en el presente caso dispuso de cuatro casos consolidados, a saber: KLAN2011-01883, KLAN2012-00427, KLAN2012-00497 y KLCE2012-00267. En la Petición de *Certiorari* presentada originalmente por el Estado el 29 de agosto de 2012, éste solicitó la revisión de la sentencia en su totalidad, es decir, peticionó la revocación de la disposición del Tribunal de Apelaciones en los cuatro casos mencionados. Esta petición de *certiorari* estuvo acompañada de una *Moción en solicitud de autorización para presentar petición de certiorari en exceso de páginas*, la cual fue declarada no ha lugar por este Tribunal. Así, se le concedió al Estado un término de cinco días para que presentara su recurso en cumplimiento con el límite de páginas establecido en el Reglamento de este Tribunal Supremo. Véase, Resolución del 6 de septiembre de 2012. Conforme a ello, el Estado presentó una versión en cumplimiento en la que especificó que solicitaba la revisión de la sentencia en lo que concernía únicamente al caso KLAN2012-00497. Véase, Petición de *certiorari* del 24 de septiembre de 2012, pág. 3, escolio 3. En esa misma fecha, el Estado presentó una *Moción de desistimiento parcial* en la que desistió de los primeros seis errores expuestos en la petición de *certiorari* originalmente presentada que hacían referencia a la disposición del Tribunal de Apelaciones en los casos KLAN2011-01883, KLAN2012-00427 y KLCE2012-00267. Esta moción fue declara ha lugar. Véase, Resolución del 29 de noviembre de 2012. Así las cosas, el único caso del Tribunal de Apelaciones que quedó pendiente de revisión ante este Tribunal Supremo era el KLAN2012-00497.

[13] Véase, Resolución del 25 de enero de 2013.

[14] 4 LPRA Ap. XXI-A.

específicamente en lo que respecta al caso número KLAN2012-00497.

Lo acordó y manda el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada señora Pabón Charneco emitieron sus respectivas Opiniones de Conformidad. El Juez Asociado señor Rivera García emitió una Opinión Disidente a la que se unieron el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón. La Jueza Presidenta Oronoz Rodríguez hizo constar la siguiente expresión: "La Jueza Presidenta Oronoz Rodríguez está conforme por entender que procedía declarar con lugar la demanda de impugnación de confiscación y ordenar la devolución del vehículo. Ello, en vista de que la causa penal relacionada con la confiscación no prosperó." El Juez Asociado señor Estrella Martínez hizo constar la siguiente expresión: "El Juez Asociado señor Estrella Martínez está conforme con el dictamen emitido por este Tribunal por los fundamentos contenidos en su Voto Particular Disidente emitido en Bco. Bilbao Vizcaya *et al.* v. ELA *et al.*, 2015 TSPR 152, 194 DPR __ (2015)."

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., *et als.*, Luis Marzán Oyola, Lloyd S. Flores Báez, Toyota Credit y Otros<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionarios | CC-2012-0767 | |

Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 18 de marzo de 2016

I

Dados los efectos nocivos que acarrearán las sentencias que hoy certifica este Tribunal, producto de la artificiosa prolongación, mediante la celebración de una vista oral innecesaria,[15] de una controversia sobre la cual los jueces que componemos este Tribunal habíamos ya formulado un criterio, me veo obligada a expresarme nuevamente.

Hoy, este Tribunal, por estar igualmente dividido, certifica dos sentencias confirmando los dictámenes recurridos en los casos *Banco Bilbao Vizcaya v. E.L.A.*,

---

[15] Para una pormenorización de las razones en virtud de las cuales la vista oral celebrada el 1 de marzo de 2016 fue *innecesaria*, véase *Banco Bilbao Vizcaya et al. v. E.L.A.*, 2015 T.S.P.R. 152, 194 D.P.R. __ (2015) (Rodríguez Rodríguez, J., Voto Particular Disidente).

CC-2012-0767, y *Mapfre Praico Ins. Co. v. E.L.A.*, CC-2013-1077. Ello, luego de la celebración de una vista oral superflua que, evidentemente, no contribuyó en lo absoluto a la consecución de algún consenso, como ya habíamos adelantado. Más aún, es menester señalar que, si la vista en cuestión no se hubiese celebrado, este Tribunal hubiera estado en posición de resolver de una vez y por todas, la controversia común que comparten los referidos casos. Y es que el 10 de noviembre de 2015, día en que se certificó la resolución que dispuso para la celebración de la vista oral, este Tribunal estaba compuesto por nueve jueces, ocho de los cuales habíamos emitido por escrito un criterio sobre el caso de epígrafe el cual era contrario a la posición que en aquel entonces había propuesto el Juez ponente. Existiendo por lo tanto una posición mayoritaria sobre el curso a seguir en estos casos, el "retiro artificial" de la fallida ponencia y la convocatoria *in articulo mortis* a una vista oral, solo ha servido para: dilatar aún más la solución de estos casos y de las decenas de casos similares que penden ante nuestro Tribunal, el Tribunal de Apelaciones y el Tribunal de Primera Instancia; para obligar a las partes a incurrir en costes adicionales innecesarios, y para propiciar la incertidumbre jurídica sobre el alcance de una ley que genera amplia litigación en nuestros tribunales. En fin, la actuación que censuramos en aquel

momento apunta a una no muy eficaz y feliz administración de la Justicia. Véase *Banco Bilbao Vizcaya et al. v. E.L.A.*, 2015 T.S.P.R. 152, 194 D.P.R. __ (2015) (resolución).

Reitero, nos parece lamentable que debido a un inopinado retraso, carente de justificación jurídica, se sancione un pasmoso estado de incertidumbre en los foros inferiores. Es decir, ante las sentencias que hoy suscribe este Tribunal, tanto el Tribunal de Primera Instancia, como el Tribunal de Apelaciones, no tendrán una guía clara de cómo atender controversias análogas. Asimismo, con tal proceder, este Tribunal desatiende una de sus funciones medulares: pautar el derecho en nuestra jurisdicción. Ante una situación como ésta, pues, le competerá a la Legislatura tomar cartas en el asunto y disponer la solución definitiva a la que no pudo llegar este Tribunal.

En vista de lo anterior, reitero mi criterio de que la vista oral en el caso de epígrafe fue *patentemente innecesaria* y, peor aún, sancionó veladamente un estado de incertidumbre en los foros inferiores, al dilatar la disposición definitiva del caso que nos atañe.

II

Por último, en cuanto a los méritos de la controversia que este Tribunal hoy rehúye resolver, baste con señalar que ésta ya fue resuelta definitivamente en

*Coop. Seg. Mult. v. E.L.A.*, 180 D.P.R. 655 (2011). En aquella ocasión, este Tribunal determinó, sin ambages, que "[a]l amparo de nuestras interpretaciones constitucionales, y cónsono con la normativa federal vigente, hemos vinculado el resultado del proceso civil de confiscación al desenlace de la causa criminal contra la persona imputada del delito a base del cual se justifica la confiscación". *Id.* en la pág. 680 (2011).[16] Ello, pues, debería ser suficiente para disponer de la controversia planteada por el peticionario. Máxime, cuando lo resuelto por este Tribunal en *Coop. Seg. Mult.* se fundamentó en consideraciones constitucionales, aun cuando éstas no hayan sido explicitadas.

III

En vista de lo anterior, *estoy conforme.*

Anabelle Rodríguez Rodríguez<br>Juez Asociada

---

[16] Conviene recordar que cuatro de los ochos jueces que actualmente componen este Tribunal estuvieron conformes con lo resuelto en *Coop. Seg. Mult.*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., et als., Luis Marzán Oyola, Lloyd S. Flores Báez, Toyota Credit y otros<br><br>     Recurridos<br><br>          v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>     Peticionario | CC-2012-0767 | *Certiorari* |

Opinión de Conformidad emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 18 de marzo de 2016.

> *This Court holds only the judicial power— the power to pronounce the law as [the legislative branch] has enacted it. We lack the prerogative to repair laws that do not work out in practice, just as the people lack the ability to throw us out of office if they dislike the solutions we concoct. We must always remember, therefore, that "[o]ur task is to apply the text, not to improve upon it.*[17]

Estoy conforme con el resultado anunciado en la Sentencia que antecede. Debido a que con la aprobación de la Ley Núm. 119-2011, *infra*, no se incluyó disposición estatutaria alguna que prohíba la aplicación de la doctrina de impedimento colateral por sentencia en los procedimientos de confiscaciones, y que no nos compete como parte de nuestra labor judicial suplir al estatuto esa prohibición ante un

---

[17] *King v. Burwell*, 576 U.S. ___ (2015). (Op. Disidente de Scalia, J.).

silencio estatutario, procede confirmar el dictamen emitido por el *foro a quo.*

I

Como cuestión de umbral y en aras de contextualizar la controversia de autos, es necesario hacer un recuento breve de la legislación que se ha aprobado en nuestra jurisdicción para regular el ámbito de las confiscaciones civiles.

Como parte del esfuerzo que llevó a cabo el Estado por varias décadas para uniformar los procedimientos de confiscación previamente esparcidos en distintas leyes especiales, la entonces Asamblea Legislativa aprobó la Ley Núm. 93 de 13 de julio de 1988, según enmendada, conocida como Ley Uniforme de Confiscaciones de 1988, 34 LPRA ant. Sec. 1723 *et seq. Véase, Coop. Seg. Mult. V. E.L.A.,* 180 DPR 655, 663 (2011). Con su aprobación se derogó la Ley Núm. 39 de 4 de julio de 1960, según enmendada, conocida como Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, 34 LPRA ants. secs. 1721 y 1722, cuya vigencia reguló las confiscaciones civiles en nuestra jurisdicción por aproximadamente tres (3) décadas.

Bajo las disposiciones de las derogadas leyes uniformes de confiscaciones de 1960 y 1988, y sus posteriores enmiendas, hubo un "decidido desarrollo de nuestra jurisprudencia hacia condicionar el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito". *Coop. Seg. Mult. V. E.L.A., supra,*

pág. 676. Así pues, y a pesar de que la Asamblea Legislativa repetidamente ha adoptado la modalidad de confiscación civil o *in rem vis-à-vis* la confiscación criminal o *in personam*[18], desde *Carlo v. Srio. de Justicia,* 107 DPR 356 (1978) nuestro desarrollo jurisprudencial consecuentemente ha utilizado la doctrina de impedimento colateral por sentencia al momento de adjudicar controversias suscitadas bajo los estatutos de confiscación anteriores. Amparados en esa doctrina, se trazó una marcada tendencia de condicionar la acción civil de confiscación al resultado de la acción penal. De modo que un dictamen de culpabilidad en la acción penal era un requisito *sine qua non* para continuar con el proceso civil de confiscación.

Así pues, a partir de la norma pautada en *Carlo v. Srio. de Justicia, supra,* este Foro continuó forjando abundante jurisprudencia encaminada a trazar la tendencia de condicionar la acción de impugnación de confiscación al resultado obtenido en la esfera penal. *Véanse*, por ejemplo, *Del Toro Lugo v. ELA,* 136 DPR 973 (1994); *Suárez v. ELA,* 162 DPR 43 (2004) (*Per Curiam*); *Ford Motor v. ELA,* 174 DPR 735 (2008); *Díaz Morales v. Depto. de Justicia,* 174 DPR 956 (2008) (*Per Curiam*); *Coop. Seg. Mult. v. ELA, supra.*

---

[18] Véanse, Ley Núm. 39 de 4 de julio de 1960, según enmendada, conocida como Ley Uniforme de Confiscaciones de Vehículos, Bestias y Embarcaciones, 34 LPRA ants. secs. 1721 y 1722; Ley Núm. 93 de 13 de julio de 1988, según enmendada, conocida como Ley Uniforme de Confiscaciones de Vehículos, Bestias y Embarcaciones, 34 LPRA ants. secs. 1723-1723(p); Ley Núm. 119-2011, conocida como Ley Uniforme de Confiscaciones de 2011,34 LPRA sec. 1724 *et seq.*

Un análisis de los referidos pronunciamientos jurisprudenciales demuestra que de la misma manera que este Tribunal reiteradamente ha reconocido el carácter independiente entre una acción *in rem* y la acción *in personam,* hemos sido consistentes en enfatizar que el resultado de la acción penal que dio lugar a la confiscación es determinante y está necesariamente atado al proceso de confiscación civil. A esos efectos, y tan reciente como en el 2011, expresamos que "no se trata únicamente de la aplicación de la doctrina de impedimento colateral por sentencia, sino de excepciones a la independencia del proceso *in rem* fundadas en la extinción de la acción penal contra la persona presuntamente responsable del delito". *Coop. Seg. Mult. v. ELA, supra,* pág. 676.

Es menester apuntar que mientras se desarrolló la referida progenie jurisprudencial, en el año 2000 la Asamblea Legislativa promulgó la Ley Núm. 32-2000 con el fin de enmendar la Ley Núm. 93, *supra*. Específicamente, el estatuto enmendó el Art. 2 de la Ley Núm. 93, *supra,* para adicionarle un inciso (c) y **expresamente excluir** la aplicación de la doctrina de impedimento colateral por sentencia en casos de confiscación. A esos efectos, la mencionada enmienda establecía lo siguiente:

> [e]l resultado favorable al acusado o imputado en cualquiera de las etapas de la acción criminal no será impedimento para, **ni tendrá efecto de cosa juzgada** sobre, la acción civil de confiscación, aunque ésta se

base en los hechos imputados en la acción penal. (Énfasis suplido) Art. 2, inciso (c) de la Ley Núm. 32-2000, 2000 LPR 376.

Apenas tres (3) años después de aprobar la Ley Núm. 32, *supra*, la Asamblea Legislativa promulgó la Ley Núm. 18-2003 con el propósito expreso de derogar la precitada enmienda. La razón de ello fue atemperar el estatuto confiscatorio a los pronunciamientos jurisprudenciales emitidos hasta el momento con relación a este tema. Específicamente, la Asamblea Legislativa entendió que el inciso (c) que añadió la Ley Núm. 32, *supra,* para excluir la aplicación de la doctrina de impedimento colateral por sentencia en un procedimiento de confiscación era tajantemente incompatible con nuestros pronunciamientos jurisprudenciales en *Carlo v. Srio. de Justicia, supra,* y en *Del Toro Lugo v. ELA, supra.* Véase, Exposición de Motivos de la Ley Núm. 18-2003, 2003 LPR 64. Con su proceder, la Asamblea Legislativa fue diáfana en su intención de revertir a la normativa adoptada por este Foro al interpretar los postulados de la Ley Núm. 93, *supra*, a saber: condicionar la acción civil de confiscación al resultado de la acción penal.[19]

Como discutiré más adelante, nada en el **texto estatutario** aprobado en el 2011 nos permite concluir que la Asamblea Legislativa prohibió el uso de la doctrina de impedimento colateral por sentencia en casos de

---

[19] Véase, Informe sobre el P. de la C. 1972 de la Comisión de lo Jurídico del Senado de Puerto Rico, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria, págs. 1-3.

confiscaciones. Como veremos a continuación, el texto estatutario es nuestra primera parada en el proceso de adjudicación, ya que en nuestro ordenamiento lo determinante no es lo que *quiso* decir el legislador, sino lo que en efecto *dijo*.

En numerosas ocasiones nos hemos visto precisados a reiterar las normas de interpretación estatutaria que rigen en nuestro ordenamiento. *Cruz Parilla v. Depto. Vivienda,* 184 DPR 393 (2012) y *Romero v. Cabrer Roig,* 191 DPR 643 (2014). Como intimé, en este ejercicio debemos acudir en primer lugar al **texto** de la ley. *Cruz Parilla v. Depto. Vivienda*, *supra,* pág. 404. Si este es claro y libre de toda ambigüedad, "la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil, 31 LPRA sec. 14. De modo que, "si el lenguaje de la ley no crea dudas y es claro en cuanto a su propósito, su propio texto es la mejor expresión de la intención legislativa". *Soc. Asist. Leg. v. Ciencias Forenses*, 179 DPR 849, 862 (2010). Solo ante una ambigüedad en el texto, deben los tribunales asegurarse de cumplir con los propósitos legislativos. *Cruz Parilla v. Depto. Vivienda, supra,* pág. 404. Despúes de todo*, "the* **text** *is the law, and it is the text that must be observed."* (Énfasis suplido). A. Scalia, *A Matter of Interpretation: federal courts and the Law*, Princeton University Press, 1997, 22.

Con este marco doctrinal en mente pasemos a analizar el caso de autos al amparo de las disposiciones del estatuto vigente que regula el procedimiento de confiscación en nuestra jurisdicción.

II.

A.

La Ley Núm. 119-2011, conocida como Ley Uniforme de Confiscaciones de 2011, 34 LPRA sec. 1724 *et seq.*, es el estatuto que actualmente rige el procedimiento de confiscación en Puerto Rico. *Inter alia,* su aprobación derogó la Ley Núm. 93, *supra,* e instituyó un trámite expedito y uniforme para la confiscación de bienes por parte del Estado. Asimismo, y particularmente pertinente a la controversia ante nuestra consideración, la Ley Núm. 119, *supra,* **mantuvo inalterada la naturaleza in rem de las confiscaciones en nuestra jurisdicción, modalidad que ha regido en nuestro ordenamiento por varias décadas.**

En cuanto a este particular en el Artículo 2 de la Ley Núm. 119, *supra,* el Legislador dispuso que: "[…] se **sostiene y reafirma** la naturaleza *in rem* de las confiscaciones, independientemente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza".[20] Del texto estatutario podemos colegir como la Asamblea Legislativa mantuvo intacta la política pública que ha regido

---

[20] Véanse, además, Arts. 8 y 15 de la Ley Núm. 119, *supra.* (Énfasis suplido).

en nuestra jurisdicción en cuanto a la naturaleza *in rem* de las confiscaciones. En varios Artículos de la Ley Núm. 119, *supra,*[21] el legislador ratificó que la confiscación es un procedimiento civil que va dirigido contra la cosa misma y por consiguiente, independiente de cualquier otro proceso que se pueda llevar contra el dueño o el poseedor de los bienes ocupados. 34 LPRA sec. 1724e. **En otras palabras, la Ley Núm. 119, *supra,* no añadió o altero nada en nuestro ordenamiento con respecto a las confiscaciones civiles.**

Nótese que el legislador utilizó el vocablo "reafirmar" lo que significa que la Asamblea Legislativa afirmó nuevamente lo que ya existía en nuestro ordenamiento y en nuestras expresiones jurisprudenciales en este tema. Es decir, la Asamblea Legislativa ratificó que la acción de confiscación es independiente de cualquier otra acción, ya sea penal, administrativa o de otra índole. Ello ha sido así en nuestro ordenamiento por décadas. Como vimos, esta independencia es precisamente lo que este Tribunal consistentemente señaló en las ocasiones que interpretó las disposiciones de la derogada Ley Núm. 93, *supra,* y aplicó la doctrina de impedimento colateral por sentencia.

Por otro lado, y a diferencia de la Ley Núm. 32, *supra*, aprobada en el año 2000 es importante enfatizar que la Asamblea Legislativa no incluyó prohibición expresa alguna en la Ley Núm. 119, *supra*, en cuanto a la aplicación de la

---

[21] *Íd.*

doctrina de impedimento colateral por sentencia en pleitos de impugnación de confiscación. Esto factor es clave, ya que, como veremos, la Asamblea Legislativa conocía la línea jurisprudencial que habíamos construido por décadas, y en vez de incluir una disposición estatutaria en la que se prohibiera el uso del impedimento colateral por sentencia, terminó construyendo un estatuto en el que se repite lo que siempre ha sido la norma en este tema: que el procedimiento penal y el civil de confiscación son diferentes y por lo tanto, independientes.

B.

Un análisis del **texto** de la Ley Núm. 119, *supra,* nos demuestra que la Asamblea Legislativa no fue diáfana en su intención de desligar totalmente el desenlace del proceso penal de la acción civil de confiscación como lo hizo en el año 2000 mediante la aprobación de Ley Núm. 32, *supra*. Por lo tanto, no podemos concluir que los tribunales están impedidos de utilizar la determinación favorable obtenida en el proceso penal para disponer de la acción civil de confiscación.[22]

---

[22] Cabe mencionar que el 22 de febrero de 2016 se presentó en la Cámara de Representantes el P. de la C. 2816. Este propone una enmienda al Artículo ocho (8) de la Ley Núm. 119, *supra,* para añadir lo siguiente:

> El proceso de confiscación será uno civil dirigido contra los bienes e independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado.

> En aquellos casos de naturaleza penal en que, luego de una adjudicación de los hechos en sus méritos, la acción no prospere, resulte en una absolución, el imputado de delito

La aprobación de la Ley Núm. 119, *supra,* no es más que un ejercicio legislativo en el que la Asamblea Legislativa confeccionó una Ley nueva, pero acabó repitiendo lo que ha sido el estado de derecho por décadas, a saber: la naturaleza civil e **independiente** del procedimiento de confiscación *in rem* con respecto a la acción *in personam.* Según hemos discutido, a través de los años este Foro ha enfatizado que "la confiscación civil constituye una acción **independiente** del resultado de la acción penal". *Del Toro Lugo v. E.L.A., supra,* pág. 983(Énfasis suplido) y que, "la confiscación civil es una acción **independiente** de la acción penal". *Coop. Seg. Mult. V. E.L.A., supra,* pág. 668, (Énfasis suplido). Véase, además, *Ford Motor v. ELA, supra.* Contrastemos estas expresiones jurisprudenciales con el texto de la Ley Núm. 119, *supra.*

Al exponer la política pública de la Ley Núm. 119, *supra,* el legislador dispuso en el **texto** de la Ley que "se **sostiene y reafirma** la naturaleza *in rem* de las confiscaciones, independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza". Artículo 2 de la Ley Núm. 119, *supra,* (Énfasis

---

obtenga un resultado favorable, y final, por cualquier fundamento, o la posibilidad que tiene el Estado para encausar a la persona imputándole la comisión del delito se extinga, **se aplicará la doctrina de cosa juzgada e impedimento colateral por sentencia.** (Énfasis suplido).

De lo anterior podemos colegir que la actual Asamblea Legislativa está considerando un proyecto de ley que expresamente reconoce la aplicabilidad de la doctrina de cosa juzgada e impedimento colateral por sentencia en los procesos de confiscación.

suplido). *Véanse*, además, Arts. 8 y 15 de la Ley Núm. 119, *supra.* Este texto estatutario sencillamente recoge el estado de derecho vigente previo a la aprobación de la Ley Núm. 119, *supra*. Es decir, el legislador no cambió nada.

De lo anterior podemos colegir como la Asamblea Legislativa incluyó en el texto de la Ley Núm. 119, *supra,* **lo que desde hace varias décadas este Tribunal ha enfatizado.** Ello, a pesar de que el legislador conocía el andamiaje jurisprudencial trazado por este Foro en casos de confiscaciones civiles en el cual a pesar de reconocer la independencia entre la acción *in rem* y la *in personam,* consistentemente atamos la primera al resultado de la causa criminal. Como podemos apreciar, lo que hizo el legislador fue reafirmar el estado de derecho vigente.

Es menester señalar que en el texto de la Ley Núm. 119, *supra,* la Asamblea Legislativa no incluyó tajante y textualmente una prohibición al uso de la doctrina de impedimento colateral por sentencia en los procesos de confiscación. No podemos ignorar que en nuestra función judicial nuestro punto de partida al momento de interpretar un estatuto es lo que **expresó** el legislador en el texto de la ley, no lo que **quiso** expresar y no incluyó.

Sería erróneo y contrario a nuestro desarrollo jurisprudencial concluir que como la Asamblea Legislativa reiteró e incluyó en el texto de la ley que el proceso de confiscación civil es uno independiente del proceso penal, lo

que verdaderamente quiso decir es que estaba vedado utilizar la doctrina de impedimento colateral por sentencia en un procedimiento de impugnación de confiscación civil. Ese razonamiento tendría el efecto de **suplir** esa intención al texto de la Ley Núm. 119, *supra,* cuando sencillamente esa prohibición no existe en el cuerpo del estatuto. El hecho que el legislador expresara que los procesos son independientes meramente **repite** lo que ha sido el estado de derecho por décadas en el ámbito de las confiscaciones civiles en Puerto Rico.

No existe ninguna sección en el texto de la Ley Núm. 119, *supra,* que prohíba el uso de la doctrina de impedimento colateral por sentencia en estos casos. Lo que es más, aún si buscáramos esa prohibición fuera del texto, en ninguna parte de la Exposición de Motivos o del historial legislativo se incluye una intención de eliminar la aplicación de la figura de impedimento colateral por sentencia en estos procesos. A pesar que en el pasado se ha legislado para expresamente prohibir el uso de la doctrina de impedimento colateral por sentencia, como se hizo en el año 2000, en esta ocasión la Asamblea Legislativa no lo hizo. Como la Asamblea Legislativa lo que sí hizo fue repetir una norma vigente en nuestro ordenamiento, no veo razón para que nos desviemos de nuestra línea jurisprudencial en este tema.

Al ejercer nuestra función judicial no podemos alejarnos de las disposiciones expresas incluidas en la Ley Núm. 119,

*supra,* **para suplir una prohibición que el legislador no incluyó en el texto del estatuto.** Ese proceder socavaría las normas de interpretación estatutaria que rigen en nuestro ordenamiento y constituiría un ejercicio de legislación judicial rechazado por nuestro ordenamiento constitucional. Según hemos discutido, lo determinante es el **texto** que aprobó el legislador, no lo que quería aprobar. Solo cuando existe ambigüedad en el texto estatutario podemos recurrir a la intención legislativa. **Nada** en la Ley Núm. 119, *supra,* es ambiguo: meramente se repite el derecho vigente y por consiguiente se convalida nuestro desarrollo jurisprudencial en este tema. Ante ese escenario, no podemos acudir a una alegada intención legislativa para resolver la controversia de autos. Mucho menos podemos explorar primero si una "determinada interpretación y resultado" va acorde con el texto del estatuto; *a contrario sensu*, primero acudimos al texto estatutario y luego lo interpretamos.

Reafirmo que nuestra función judicial en primera instancia se limita a analizar el texto estatutario. Cuando el texto de la Ley es claro, como es el caso de la Ley Núm. 119, *supra,* nuestra labor interpretativa culmina ahí: no debemos acudir a una intención legislativa gris para encontrar lo que alegadamente el legislador quiso decir y así validar un resultado particular.[23]

---

[23]Debido a que esta controversia puede resolverse mediante interpretación estatutaria, no hay razón para atender asuntos constitucionales en cuanto

                                    III

    Por todo lo anteriormente expuesto, estoy conforme con el resultado anunciado en la Sentencia que antecede. Debido a que la Ley Núm. 119, *supra,* no alteró nada en nuestro ordenamiento con respecto a las confiscaciones civiles, procede aplicar al caso de autos – como correctamente hizo el *foro primario* – la doctrina de impedimento colateral por sentencia. De modo que el Tribunal de Apelaciones actuó correctamente al confirmar el dictamen emitido por el Tribunal de Primera Instancia.



                    Mildred G. Pabón Charneco
                    Jueza Asociada

---

a la aplicación de la figura de impedimento colateral por sentencia a estos casos. Debemos recordar que "los tribunales no debemos entrar a considerar la constitucionalidad o inconstitucionalidad de una ley o de una actuación a menos que ello sea imprescindible y que la controversia bajo consideración no pueda ser adjudicada por otros fundamentos". *Pueblo v. Yip Berrios,* 142 DPR 386, 421 (1997) (Citas omitidas).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Bilbao Vizcaya y
Universal Insurance
Company, Puerto Rican
American Insurance Company,
Reliable Financial
Services, Inc., et als.,
Luis Marzán Oyola, Lloyds
S. Flores Báez, Toyota
Credit y otros
Recurridos

v.

Estado Libre Asociado de
Puerto Rico
Peticionario

*Certiorari*

CC-2012-0767

**Opinión disidente emitida por el Juez Asociado señor RIVERA GARCÍA a la que se unen el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón**

En San Juan, Puerto Rico, a 18 de marzo de 2016.

En el presente caso, el Estado confiscó un vehículo de motor presuntamente utilizado en violación a la Ley de Armas de Puerto Rico. A su vez, presentó cargos criminales en contra de las dos personas que ocupaban el vehículo de motor al momento de la confiscación. En ambos casos, los cargos criminales fueron desestimados por *violación a los términos* establecidos en las Reglas de Procedimiento Criminal para la celebración de la vista preliminar y del juicio en su fondo. Ante ese sencillo cuadro fáctico, este Tribunal debía responder dos interrogantes.

*Primero*, si procedía utilizar una determinación penal favorable al imputado de delito *basada en términos* para disponer de la acción civil de confiscación que se originó a consecuencia de los mismos hechos. *Segundo*, si este Tribunal debía continuar condicionando la confiscación civil de la propiedad a que el Estado haya logrado una convicción a nivel penal.

Hoy cuatro compañeros miembros de esta Curia – por fundamentos distintos entre sí – optan por contestar afirmativamente ambas interrogantes y avalan así la determinación del Tribunal de Apelaciones de anular *automáticamente y sin mayor consideración* el proceso civil de confiscación basado *exclusivamente* en la determinación favorable obtenida a nivel penal, aun cuando ésta se debió a planteamientos ajenos a los méritos de la acusación. De esta manera, insisten erróneamente en continuar condicionando el proceso civil de confiscación a lo acontecido en el proceso penal bajo el pretexto de teorías constitucionales y estatutarias *totalmente inaplicables* a los hechos precisos ante nuestra consideración. Atentando así contra la clara y expresa independencia del proceso civil de confiscación y del proceso penal establecida explícitamente por nuestra Asamblea Legislativa en la Ley Uniforme de Confiscaciones de 2011.[24]

En su lugar, lo que procedía en derecho era que este Tribunal contestara negativamente ambas interrogantes a la luz de las disposiciones de la mencionada nueva legislación

---

[24] Ley Núm. 119-2011, según enmendada, conocida como "Ley Uniforme de Confiscaciones de 2011". (34 LPRA secs. 1724-1724w).

de confiscaciones. Cónsono con ello, este Foro debió concluir que los tribunales _no_ pueden disponer de una acción civil de impugnación de confiscación basados _exclusivamente_ en el resultado favorable obtenido en la esfera penal. No se sostiene en derecho que un dictamen favorable en un proceso penal anule _automáticamente y sin mayor consideración_ un proceso _civil_ de confiscación para el cual, como primer punto, se requiere un estándar de prueba mucho menor. Siendo así, independientemente del desenlace criminal a favor del imputado de delito a raíz de los mismos hechos que motivaron la confiscación, _y en ausencia de algún otro planteamiento que amerite un dictamen sumario_, los foros de primera instancia deberían dilucidar en sus méritos las demandas civiles de impugnación de confiscación conforme al proceso delineado por la Asamblea Legislativa en la Ley Uniforme de Confiscaciones de 2011.

A continuación explicamos en más detalle nuestra posición. En ello, y a fin de propiciar una mejor comprensión de la opinión disidente que hoy emitimos, primeramente expondremos una perspectiva general del proceso de confiscación dirigida, particularmente, a resaltar las diferencias entre una confiscación civil y una confiscación criminal, las cuales parecen pasar por alto los compañeros Jueces y Juezas que están conforme con el resultado alcanzado por el Tribunal de Apelaciones en el presente caso. Segundo, repasaremos los pronunciamientos anteriores emitidos por este Tribunal en los cuales aplicó

**4**

la doctrina de impedimento colateral por sentencia, y como consecuencia, avaló la anulación de la confiscación en aquellos casos en que el imputado de delito hubiese obtenido un resultado favorable. Tercero, indagaremos brevemente sobre los fundamentos que sustentaron la jurisprudencia anterior emitida por este Tribunal. Por último, expondremos las nuevas disposiciones de la Ley Uniforme de Confiscaciones de 2011 a fin de determinar si la Asamblea Legislativa mantuvo la intención de continuar condicionando el proceso civil de confiscación a las incidencias suscitadas en la esfera penal.

**I**

A. **Confiscación: conceptos generales**

La confiscación es el acto mediante el cual el Estado, representado en este caso por el Poder Ejecutivo, priva a una persona de su propiedad sin compensación económica, basado únicamente en que dicha propiedad fue utilizada en la comisión de ciertos delitos predeterminados por la Asamblea Legislativa o porque tal bien es producto o resultado de una conducta prohibida por ley.[25] En ese esquema, le corresponde *exclusivamente* al Poder Legislativo determinar bajo qué circunstancias, condiciones y procedimientos particulares el Estado está facultado para confiscar una propiedad involucrada en una actividad delictiva, dentro de los parámetros constitucionales

---

[25] Ford Motor v. E.L.A., 174 DPR 735, 741 (2008); Suárez v. E.L.A., 162 DPR 43 (2004); Del Toro v. E.L.A., 136 DPR 973, 980-981 (1994).

aplicables.[26] En este ejercicio, la Asamblea Legislativa podría instituir el proceso de confiscación bajo una de dos modalidades: *primero*, mediante una confiscación de carácter criminal, conocida como confiscación *in personam* o; *segundo*, por vía de una confiscación de índole civil, mejor conocida como confiscación *in rem*.[27]

De la Asamblea Legislativa optar por la primera modalidad, instituiría entonces la confiscación como una penalidad adicional contra una persona que ha sido convicta de delito. Es por esto que la confiscación *in personam* forma parte integral del procedimiento criminal, ya que se trata de una acción directa contra el propietario o poseedor de la propiedad a ser incautada y cuya procedencia va a depender ineludiblemente de que la persona salga culpable del delito imputado. Únicamente en esas circunstancias se le podría confiscar la propiedad como una sanción adicional. Por lo tanto, bajo este procedimiento, el involucramiento de la persona en la actividad delictiva, y eventual convicción, es el fundamento que da base a la confiscación de la propiedad.

Por otra parte, del Poder Legislativo instituir la segunda modalidad de confiscación, se establecería entonces un procedimiento civil *in rem* que va dirigido contra la

---

[26] En el caso de Puerto Rico, el poder de confiscación del Estado está supeditado a las exigencias constitucionales incluidas en el Art. II, Sec. 7 de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. E.L.A., LPRA, Tomo I y la Enmienda Quinta y Catorceava de la Constitución de Estados Unidos, U.S.C.A. Enmd. V y XIV, las cuales garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley.

[27] Mapfre PRAICO, et als. v. E.L.A., 188 DPR 517, 525 (2013); Coop. Seg. Múlt. v. E.L.A., 180 DPR 655, 664 (2011).

cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta.[28] Por ello, la pregunta a dilucidar bajo este procedimiento es, si la propiedad confiscada fue utilizada para la comisión de una actividad delictiva. Siendo así, *bajo la modalidad de confiscación in rem la interrogante de quién utilizó la propiedad es, generalmente, impertinente porque el objetivo principal de esta acción es demostrar que la propiedad fue utilizada en una actividad prohibida por ley, independientemente de quién lo hizo*. En ese sentido, no se trata de adjudicarle a la propiedad la capacidad de delinquir y tratarla como la autora de un delito, sino de establecer mediante preponderancia de la prueba que la propiedad fue empleada en la comisión de una actividad ilegal. Conforme a ello, en todos los casos de confiscación resueltos por esta Curia se ha reiterado que los únicos elementos pertinentes a la determinación de si procede una confiscación civil son: (1) si existe *prueba suficiente y preponderante* de que se ha cometido un delito y (2) si existe un nexo entre la comisión del delito y la propiedad confiscada.[29]

Nótese que contrario a la confiscación *in personam*, la confiscación *in rem* es una acción completamente separada e independiente del procedimiento criminal que se dilucide contra el presunto autor del delito. Por ello, la

---

[28] López v. Secretaria, 162 DPR 345, 352 (2004); Negrón v. Srio. de Justicia, 154 DPR 79,87 (2001).

[29] Suárez v. E.L.A., 162 DPR 43, 52 (2004); Del Toro Lugo v. E.L.A., supra, pág. 983; Pueblo v. González Cortés, 95 DPR 164, 171 (1967).

confiscación civil podría prevalecer aun cuando el Estado no haya obtenido un resultado favorable en el proceso penal. Esto, pues, como mencionáramos, *el enfoque en la confiscación civil no es si la persona incurrió en un delito, sino si la propiedad fue utilizada en una actividad ilegal* (e.g. si determinado vehículo de motor fue utilizado para transportar droga, independientemente de quién la transportó).[30] En ese escenario, el derecho del Estado a tomar la propiedad surge, precisamente, de ese uso indebido.

En el caso particular de Puerto Rico, la Asamblea Legislativa históricamente ha optado por adoptar esta instancia de confiscación *in rem*.[31] Así, cónsono con la doctrina discutida, reiteradamente este Tribunal ha aludido a las distinciones típicas entre las confiscaciones civiles y las confiscaciones criminales. No obstante, esa discusión se ha limitado a una referencia automática, casi dogmática, como parte de un repaso doctrinal del proceso de confiscación y la cual nunca ha tenido un impacto real en la adjudicación de las controversias que hemos considerado hasta el presente concerniente al tema de confiscación.[32]

Esto porque, al momento de adjudicar las controversias suscitadas bajo las leyes de confiscaciones anteriores, y a

---

[30] Esto sujeto a las correspondientes defensas reconocidas en nuestro ordenamiento (e.g. tercero inocente).

[31] Véanse, la derogada Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, Ley Núm. 39 de 4 de junio de 1960, 34 LPRA ants. secs. 1721 y 1722, sustituida por la también derogada Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988 34 LPRA ants. secs. 1723 - 1723(p), y la actual Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011, supra.

[32] Véase, Coop. Seg. Mult. v. E.L.A., supra, págs. 664-665; Del Toro Lugo v. E.L.A., supra, págs. 981-983.

pesar de que estas establecían la naturaleza *in rem* del procedimiento, este Tribunal siempre partió de la premisa *fundamentada* de que la Asamblea Legislativa tenía la intención de condicionar la acción civil de confiscación al resultado de la acción penal. Es por ello, que consistentemente este Tribunal utilizó la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia para anular toda confiscación que estuviera acompañada de un dictamen favorable al imputado en el proceso penal. Así, se ha avalado la disposición sumaria de las demandas de impugnación de confiscación sin una adjudicación en sus méritos, simplemente basados en los acontecimientos suscitados en la esfera penal. De esta forma, hasta el momento este Foro le ha brindado a la confiscación *civil* un tratamiento paralelo y fundamentado en las características esenciales de una confiscación *criminal*. Veamos.

**B. Doctrina de impedimento colateral por sentencia y su aplicación al proceso de confiscación en decisiones anteriores bajo la legislación derogada**

La doctrina de impedimento colateral por sentencia opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y la determinación es concluyente en un segundo pleito entre las mismas partes.[33] Es decir, la aplicación de esta doctrina depende de que un hecho fundamental en un proceso actual haya sido *expresamente*

---

[33] Coop. Seg. Mult. v. E.L.A., 180 DPR 655, 672-673 (2011); Suárez v. E.L.A., 162 DPR 43, 59 (2004).

dilucidado como un *elemento clave* en un proceso anterior mediante una sentencia legítima y final entre las mismas partes.[34] De ese ser el caso, la doctrina de impedimento colateral por sentencia evita que las partes tengan la necesidad de litigar nuevamente un hecho ya adjudicado entre ellas en un dictamen anterior.[35]

En el contexto específico de las confiscaciones, este Tribunal ha utilizado esta doctrina *estatutaria* para concluir que la absolución en los méritos adjudica con finalidad irreversible el hecho central, tanto para el caso criminal como para el de confiscación, de que la propiedad no fue utilizada en una actividad ilícita. Por ello, desde Carlo v. Srio. de Justicia, 107 DPR 356 (1978), este Foro determinó que "[l]a doctrina de impedimento colateral por sentencia exige la desestimación del segundo proceso, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se adjudicaron y determinaron hechos necesariamente decisivos para el segundo".[36] En esa ocasión, este Tribunal específicamente delimitó el alcance de esta normativa a aquellas circunstancias en las que, en efecto, se hubiese dado una "absolución en los méritos [que] inevitablemente comprend[iera] la adjudicación de la

---

[34] Por "hecho necesario" o "elemento clave" nos referimos a que ese hecho que se pretende identificar en el segundo proceso como uno previamente adjudicado, haya sido *necesario* y *fundamental* en el razonamiento de la sentencia emitida por el Tribunal en el primer proceso. Sólo así, se podría establecer en estricto rigor jurídico, que ese hecho, en efecto, fue debidamente adjudicado mediante sentencia final y firme. Véanse, Beníquez v. Vargas, 184 DPR 2010, 225-226 (2012); Presidential v. Transcaribe, 186 DPR 263, 276-277 (2012).

[35] E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Vol. II, San Juan, Ed. Forum, 1992, págs. 376-385.

[36] Carlo v. Srio. de Justicia, supra, pág. 363.

cuestión central de que no [se] utilizó el vehículo" en una actividad delictiva.[37]

A pesar de esta delimitación, la realidad ha sido que desde entonces, esta Curia ha establecido varias excepciones cuyo efecto directo ha consistido en condicionar la continuación de la acción civil de confiscación al resultado de la acción penal, independientemente de si en el proceso criminal se adjudicó o no en los méritos el hecho central de si la propiedad confiscada fue utilizada o no en una actividad prohibida por ley. Así, por ejemplo, en <u>Del Toro v. E.L.A.</u>, 136 DPR 973 (1994), esta Corte sostuvo que no procedía continuar con el proceso de confiscación de un vehículo de motor propiedad de un tercero cuando una determinación de no causa probable para acusar adviene final y firme. En esa ocasión se determinó, además, que no procedía la confiscación cuando el proceso penal concluía luego del sobreseimiento del caso a raíz de la supresión de la única evidencia delictiva ocupada mediante un registro ilegal. Bajo ese escenario el Tribunal concluyó que,

> la determinación final y firme respecto a la exclusión o supresión de una evidencia ilegalmente obtenida hecha en el procedimiento penal por el delito que da base a la confiscación, constituiría cosa juzgada en su modalidad de impedimento colateral por sentencia, en cuanto a la admisión de dicha evidencia en la acción de impugnación de

---

[37] (Énfasis y subrayado suplido). Íd., págs. 364-365. Sobre este particular, el Tribunal expresó específicamente lo siguiente: "[l]a decisión que hoy tomamos está *estrictamente ceñida* a la situación de derecho que se produce al concurrir circunstancias determinantes, a saber: que el acusado es dueño del vehículo confiscado; que su absolución en los méritos inevitablemente comprende la adjudicación de la cuestión central de que no utilizó el vehículo para transportar material prohibido". (Énfasis y subrayado suplido). Íd.

confiscación, siempre que dicha determinación judicial sea debidamente planteada e introducida en evidencia.[38]

Aunque con un resultado distinto, pero cónsono con la tendencia de exigir un dictamen de culpabilidad en el proceso penal como condición necesaria para continuar el proceso civil de confiscación, en First Bank, Univ. Ins. Co. v. E.L.A., 156 DPR 77 (2002), este Tribunal determinó que la ausencia de causa probable en cuanto al poseedor del vehículo de motor confiscado, hijo del dueño registral, no impedía la confiscación de la propiedad, ya que uno de los pasajeros se había declarado culpable. De esta manera, esta Curia negó la aplicación de la doctrina de impedimento colateral por sentencia y ordenó la continuación del proceso de confiscación.[39]

Igual conclusión alcanzó este Tribunal, posteriormente, en Suárez v. E.L.A., 162 DPR 43 (2004). En ese momento, este Tribunal determinó que la doctrina de impedimento colateral por sentencia impedía la continuación

---

[38] Del Toro v. E.L.A., supra, pág. 997.

[39] Interesantemente, en aquella ocasión, este Foro reconoció, incluso, la improcedencia de la anulación automática del proceso civil de confiscación basado en un resultado favorable en el proceso penal. Sobre este particular, este Foro expresó lo siguiente:

> La aplicación de la doctrina de impedimento colateral no afecta el hecho principal de que la confiscación es un procedimiento de carácter in rem, es decir, va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta. Por esto, el impedimento colateral no aplica de manera automática al impugnar la confiscación del vehículo. Aunque el poseedor del vehículo resulte absuelto de los cargos imputados, esto no es en sí mismo suficiente para declarar inválida la confiscación. *Lo determinante es si alguna actividad delictiva se ha cometido en el vehículo o mediante el uso del vehículo*, aunque la misma no haya sido cometido por el poseedor o conductor del mismo.

(Énfasis y subrayado nuestro). First Bank, Univ. Ins. Co. v. E.L.A., supra, pág. 83.

del proceso civil de confiscación en todo aquel caso en que los cargos criminales hayan sido desestimados por incumplimiento con los términos de juicio rápido. En esta ocasión, los cargos criminales habían sido desestimados porque el Ministerio Público no cumplió con el término estatutario para la celebración de la vista preliminar. Así que, transcurrido más de dos años sin la presentación de nuevos cargos criminales, este Tribunal entendió que procedía declarar con lugar la demanda de impugnación de confiscación ante la presunta dejadez reflejada por el Estado en el caso penal.

Cuatro años más tarde, este Foro resolvió dos casos adicionales en los que reconoció dos nuevas excepciones que impedían la continuación de la acción civil de confiscación basado en el resultado del proceso penal: Ford Motor v. E.L.A., 174 DPR 735 (2008) y Díaz Morales v. Dpto. de Justicia, 174 DPR 956 (2008). En el primero, la persona acusada se había declarado culpable por cargos de posesión de drogas y cumplido con todos los requisitos de un programa de desvío, por lo que el foro primario había ordenado el archivo y sobreseimiento del caso. Ante tales circunstancias, este Tribunal estableció que "el archivo y sobreseimiento de una acusación criminal al amparo de un programa de desvío y rehabilitación consti[tuía] cosa juzgada en su modalidad de impedimento colateral por sentencia en una acción civil de impugnación de confiscación".[40]

---

[40] Ford Motor v. E.L.A., supra, pág. 738.

En el segundo caso, el cual concernía a un menor en circunstancias análogas a las expuestas en el párrafo anterior, esta Curia resolvió que procedía declarar ha lugar una demanda civil de impugnación de confiscación una vez el menor cumpliera con el contrato de desvío y obtuviera un archivo definitivo de la causa penal. Esto porque, según razonaron los miembros de este Alto Foro en aquel entonces, "una vez se archiva la denuncia, según los términos del programa, se adjudica de forma favorable al acusado y se dispone con finalidad del hecho central del cual depende la confiscación: la comisión de un acto delictivo".[41]

Finalmente, en Coop. Seg. Mult. v. E.L.A., 180 DPR 655 (2011), este Tribunal atendió la controversia sobre qué efecto tiene sobre el procedimiento civil de confiscación la muerte de una persona que presuntamente utilizó la propiedad confiscada en un acto delictivo. Ante esta interrogante, *y aún bajo las disposiciones de la Ley Uniforme de Confiscaciones de 1988*, este Foro resolvió que procedía anular el proceso confiscatorio en la medida que la muerte de la persona imputada de delito extinguía la acción penal. Una vez más, este Tribunal le impregnó un carácter criminal a la confiscación de índole civil al no avalar el que se continuará el proceso de confiscación sin que alguien hubiese sido convicto de delito.

---

[41] Díaz Morales v. Dpto. de Justicia, supra, págs. 962-963.

En resumen, durante la vigencia de la Ley Uniforme de Confiscaciones de 1960 y la Ley Uniforme de Confiscaciones de 1988 este Tribunal reconoció varias excepciones que automáticamente anulaban el proceso civil de confiscación basado en las incidencias suscitadas en el proceso criminal, sin una dilucidación en los méritos sobre la controversia específica concerniente al proceso civil sobre si la propiedad confiscada fue utilizada en alguna actividad prohibida por ley. De esta manera, previo a la aprobación de la nueva ley de confiscaciones había un "*decidido desarrollo* de nuestra jurisprudencia hacia condicionar el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito".[42]

### C. Fundamentos de la jurisprudencia anterior emitida por este Tribunal

En este punto resulta meritorio destacar los fundamentos que sustentaron los pronunciamientos anteriores aquí repasados en los que, como vimos, este Tribunal constantemente condicionó la continuación del proceso civil de confiscación a lo acontecido a nivel penal. Como explicaremos, éstos estuvieron basados en dos premisas no articuladas o discutidas a profundidad en las opiniones de entonces que hoy, conforme a las disposiciones de la nueva ley, indudablemente, cobran particular importancia. *Primero*, en el presunto carácter "punitivo" del proceso de confiscación según estatuido en la legislación entonces

---

[42] Coop. Seg. Mult. v. E.L.A., supra, pág. 676.

vigente. *Segundo*, en la voluntad legislativa del momento de vincular el proceso civil de confiscación al proceso penal.

Como primer punto, no hay duda que un repaso de la jurisprudencia emitida por este Tribunal durante la vigencia de las derogadas legislaciones de confiscaciones de 1960 y 1988 nos lleva a constatar que, en efecto, este Foro le adjudicó constantemente un carácter "punitivo" al proceso de confiscación y lo caracterizó como un "castigo adicional" a la pena. No obstante, de esa misma jurisprudencia surge que este Tribunal alcanzó tal conclusión sin consignar razonamiento alguno y basado *exclusivamente* en el fin de la Asamblea Legislativa de disuadir la actividad criminal.[43] Es otros términos, para entonces fue suficiente el que la legislación mencionara que tenía un objetivo disuasivo para que este Tribunal calificara – sin mayor análisis y consideración – el proceso de confiscación como uno punitivo. Ante tal objetivo, y la *expresa* intención legislativa de *entonces* de vincular la causa criminal contra el presunto autor del delito y la acción civil de confiscación, según discutiremos a continuación, este Tribunal evitó adoptar la clara doctrina federal dirigida a establecer si un proceso de confiscación puede calificarse como "punitivo" y

---

[43] Véase, e.g., <u>Coop. Seg. Mult. v. E.L.A.</u>, supra, pág. 680, donde este Tribunal se expresó en los siguientes términos: "El proceso de incautación de propiedades al amparo de la Ley Uniforme de Confiscaciones es civil en su forma pero punitivo en su naturaleza. Su objetivo, claramente identificado por la Asamblea Legislativa, es castigar al delincuente con la pérdida de su propiedad, además de la posible pérdida de su libertad. A ello se refiere la Legislatura cuando habla del propósito disuasivo de la confiscación".

"criminal" en su fin, aun cuando el Poder Legislativo lo haya estatuido como un proceso estrictamente civil.

Como segundo punto sobre el cual se sustentó la jurisprudencia pasada emitida por este Tribunal, encontramos *la clara voluntad legislativa de entonces de vincular el proceso civil de confiscación al proceso penal*, según evidenciado en dos instancias distintas durante la vigencia de la Ley Uniforme de Confiscaciones de 1988. En primer lugar, hallamos que la Asamblea Legislativa tuvo la intención de promulgar una legislación que no fuera contraria a los pronunciamientos que este Tribunal había formulado previo a 1988. Sobre este particular, nótese que la Asamblea Legislativa de entonces específicamente consignó en el Informe Conjunto del Proyecto del Senado 1529 de 20 de mayo de 1988 que nada de lo contenido en lo que eventualmente sería la Ley Uniforme de Confiscaciones de 1988 alteraba la normativa adoptada hasta ese momento por este Tribunal Supremo en materia de confiscación. Esto incluía, claro está, la norma establecida en <u>Carlo v. Srio. de Justicia</u>, supra, respecto a la aplicación de la doctrina de impedimento colateral por sentencia al procedimiento civil de confiscación, basado en el resultado favorable en la causa criminal.[44]

---

[44] Véase, *Informe Conjunto del P. del S. 1529 de las Comisiones de lo Jurídico, de Transportación y Obras Públicas y de Hacienda del Senado de Puerto Rico de 20 de mayo de 1988*, 10ma. Asamblea Legislativa, 4ta Sesión Ordinaria, el cual en la página siete expresamente establece que "[n]ada en el P. del S. 1529 modifica la interpretación restrictiva a favor de la propiedad confiscada que el tribunal le ha dado a las disposiciones legales y vigentes sobre confiscación. <u>Vázquez Fontánez v. Tribunal Superior</u>, 103 D.P.R. 396 (1974); <u>Carlo v. Secretario de Justicia</u>, 107 D.P.R. 356 (1978)".

En segundo lugar, es importante recordar que en el 2000 la Asamblea Legislativa aprobó la Ley Núm. 32-2000 para enmendar la Ley Uniforme de Confiscaciones de 1988 y específicamente disponer que el resultado de la acción penal no sería impedimento, ni tendría efecto de cosa juzgada sobre la acción civil de confiscación.[45] Tres años más tarde, esta enmienda fue derogada mediante la Ley Núm. 18-2003. Esto porque, según la intención y razonamiento de la _entonces_ Asamblea Legislativa, era necesario ajustar el derecho positivo conforme a lo resuelto por este Tribunal en Carlo v. Srio. de Justicia, supra, y Del Toro Lugo v. E.L.A., supra.[46] De hecho, según surge del Informe sobre el Proyecto de la Cámara 1972 de la Comisión de la Jurídico

---

[45] Véase, Art. 2, inciso (c) de la Ley Núm. 32-2000, 2000 LPR 376. El mencionado artículo específicamente establecía lo siguiente:

> Naturaleza de la acción. – El resultado favorable al acusado o imputado en cualquier de las etapas de la acción criminal no será impedimento para, ni tendrá efecto de cosa juzgada sobre, la acción civil de confiscación, aunque ésta se base en los hechos imputados en la acción penal. Íd.

Sobre este particular, la parte expositiva de la Ley Núm. 32, _supra_, mencionaba lo siguiente:

> Aun cuando la doctrina jurisprudencial sobre la materia es clara, en nuestra jurisdicción se ha creado una gran confusión a raíz de las opiniones emitidas por el Tribunal Supremo. La presente medida va encaminada a precisar la naturaleza de la acción confiscatoria y a revisar otros aspectos de conformidad a la experiencia habida en la implantación de la Ley Núm. 93, antes citada.
>
> Consideramos que el resultado de la acción penal no debe ser impedimento, ni tener efecto de cosa juzgada, sobre la acción civil de confiscación, y para así establecerlo, se enmienda la Ley Núm. 93, antes citada, como se propone adelante.

Véanse, además, _Informe del P. de la C. 2621 de la Comisión de lo Jurídico de la Cámara de Representantes de 5 de noviembre de 1999_, 13era Asamblea Legislativa, 6ta Sesión Ordinaria, y la _Ponencia del Departamento de Justicia de 28 de septiembre de 1999 sobre el P. de la C. 2621_.

[46] Véase Exposición de Motivos de la Ley Núm. 18-2003, 2003 LPR 64.

del Senado de Puerto Rico – eventual Ley Núm. 18, <u>supra</u> –

esta medida pretendía,

> resolver la situación surgida con la Ley Núm. 32,
> supra, a los fines de disponer que la absolución
> en los méritos de una persona en una causa
> criminal tendrá el efecto de haber nula una
> confiscación de un vehículo hecha por el Estado a
> raíz de los mismos hechos que dieron lugar a su
> procesamiento criminal, en consideración a la
> doctrina constitucional de cosa juzgada en su
> modalidad de impedimento colateral por sentencia.
>
> Tras una absolución en el caso criminal o
> determinación de no causa en la vista preliminar
> que ha advenido final y firme no existen tales
> elementos para sostener la confiscación en el caso
> civil por lo cual es forzoso concluir la
> improcedencia de continuar con el mismo.[47]

De esta manera, la Asamblea Legislativa plasmó

claramente su intención de reconocer la normativa adoptada

por este Tribunal conforme a lo establecido originalmente

en el historial legislativo de la Ley Uniforme de

Confiscaciones de 1988. Es decir, afirmativamente avaló el

que la acción civil de confiscación estuviera condicionada

al resultado del proceso penal. Conforme a ello, los casos

resueltos bajo la Ley Uniforme de Confiscaciones de 1988,

particularmente los resueltos posterior al 2003,

respondieron, en esencia, a esa intención legislativa. Así

lo reconoció este Tribunal en <u>Coop. Seg. Mult. v. E.L.A.</u>,

supra, donde expresó lo siguiente a la luz de las

disposiciones de la entonces vigente Ley Uniforme de

Confiscaciones de 1988:

---

[47] Informe sobre el P. de la C. 1972 de la Comisión de lo Jurídico del Senado de Puerto Rico, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria, págs. 1-3. Aclaramos que, contrario a lo expresado por la Asamblea Legislativa en el citado extracto, la doctrina de impedimento colateral por sentencia es de índole estatutario.

> *La Asamblea Legislativa ha reconocido el vínculo* *entre la causa criminal contra el presunto autor* *del delito base y la acción de confiscación*. De igual forma, la ley vigente [Ley Uniforme de Confiscaciones de 1988] coincide con nuestros pronunciamientos en cuanto a la aplicación de la doctrina de impedimento colateral por sentencia que condiciona el proceso civil a la causa criminal. La Ley Núm. 18 de 1 de enero de 2003 enmendó la Ley Uniforme de Confiscaciones para eliminar el inciso que añadió la Ley Número 32 de 14 de enero de 2000 que disponía que el resultado favorable al acusado no sería impedimento a la acción civil de confiscación. *La Exposición de* *Motivos de la Ley Núm. 18 refleja con gran* *claridad el cambio en el modo de pensar en la* *Asamblea Legislativa y su decisión de vincular la* *causa criminal contra el presunto autor del* *delito con el proceso civil de confiscación*.[48]

Cónsono con estos pronunciamientos, este Tribunal debía preguntarse, en primer plano, si bajo la actual Ley Uniforme de Confiscaciones de 2011 subsiste la misma intención legislativa reflejada en la Ley Uniforme de Confiscaciones de 1988 y sus posteriores enmiendas. Es decir, ¿surge de las disposiciones de la Ley Uniforme de Confiscaciones de 2011 y/o de su historial legislativo la intención de la Asamblea Legislativa de condicionar el proceso civil de confiscación al resultado de la acción penal? En segundo plano, debió preguntarse si en la legislación vigente persiste el objetivo disuasivo y si ello, de por sí, ameritaba que continuáramos calificando como "punitivo" el proceso de confiscación. Veamos

D.   **Ley Uniforme de Confiscaciones de 2011**

---

[48] (Citas omitidas) (Énfasis y subrayado nuestro). <u>Coop. Seg. Mult. v.</u> <u>E.L.A.</u>, supra, pág. 677.

Actualmente, el proceso de confiscación en Puerto Rico se rige por la Ley Núm. 119-2011, la cual establece un procedimiento uniforme para todos los casos de confiscación en nuestra jurisdicción, independientemente de la agencia involucrada y el fundamento para la misma.[49] De acuerdo a esta legislación, el Estado puede ocupar y hacer suya toda propiedad que sea utilizada durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos se encuentren tipificados en algún estatuto confiscatorio.[50]

Entre las nuevas disposiciones incluidas en la Ley Uniforme de Confiscaciones de 2011, *supra*, y pertinentes a este caso, hallamos que la Asamblea Legislativa *expresamente* dispuso el carácter independiente del procedimiento de confiscación con relación a cualquier otro proceso. Al respecto, el Art. 2 de la Ley Núm. 119, *supra*, establece como política pública "la naturaleza *in rem* de las confiscaciones, *independiente de cualquier otra acción*

---

[49] Véase, Exposición de Motivos de la Ley Núm. 119-2011. (2011 LPR 1761).

[50] Véase, Art. 9 de la Ley Núm. 119, *supra*, 34 LPRA sec. 1724f, el cual dispone íntegramente lo siguiente:

> Estará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación.
>     Toda propiedad que esté sujeta a una sentencia de confiscación que así lo autorice, será confiscada a favor del Gobierno de Puerto Rico.

*de naturaleza penal, administrativa o de cualquier otra naturaleza*".[51] Cónsono con esta política pública, el Poder Legislativo reiteró que "[e]l proceso de confiscación será uno civil dirigido contra los bienes e *independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados* bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado".[52]

Así las cosas, la propia legislación específicamente establece el proceso que las partes y los tribunales deben seguir durante la acción civil de impugnación de confiscación. En ese contexto, el Art. 15 de la Ley Núm. 119, supra, establece en su parte aquí pertinente, que "se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos".[53] Así, "[e]l demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación".[54] Asimismo, dispone que "[p]resentada la contestación a la demanda, el Tribunal ordenará una vista sobre legitimación activa para establecer si el demandante ejercía dominio y control sobre la propiedad en cuestión antes de los hechos que motivaron la confiscación. De no cumplir con este

---

[51] (Énfasis nuestro). Art. 2 de la Ley Núm. 119, supra. (34 LPRA sec. 1724).

[52] (Énfasis nuestro). Art. 8 de la Ley Núm. 119, supra. (34 LPRA sec. 1724e).

[53] Art. 15 de la Ley Núm. 119, supra. (34 LPRA sec. 1724l).

[54] Íd.

requisito, el Tribunal ordenará la desestimación inmediata del pleito".[55]

En referencia a la derogada Ley Uniforme de Confiscaciones de 1988 y las respectivas interpretaciones formuladas por esta Curia, la Asamblea Legislativa expresó que "[d]icha Ley ha sido objeto de múltiples enmiendas e interpretaciones judiciales que han causado confusión en la implantación del estatuto".[56] Así que para efectos de dispersar cualquier duda sobre su intención de instituir un proceso de confiscación *in rem* y verdaderamente independiente, los legisladores incluyeron en la parte expositiva de la medida lo siguiente:

> En nuestra jurisdicción, la confiscación es una acción civil o *in rem*, distinta y separada de cualquier acción *in personam*. La confiscación que lleva a cabo el Estado se basa en la ficción legal de que la cosa es la ofensora primaria. *El procedimiento in rem tiene existencia independiente del procedimiento penal de naturaleza in personam, y no queda afectado en modo alguno por éste*. Los procedimientos de confiscación civil puede llevarse a cabo y culminarse antes de que acuse, se declare culpable o se absuelva al acusado. Incluso, pueden llevarse aun cuando no se haya presentado ningún cargo. Esto debido a que la acción civil se dirige contra la cosa en sí misma, en general, la culpabilidad o inocencia del propietario es irrelevante en cuanto a la procedencia o no de la confiscación civil. Goldmith-Grant Co. v. United States, 254 U.S. 505 (1921). Calero-Toledo v. Pearson Yatch Leasing Co., 416 U.S. 663 (1974). United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984).[57]

---

[55] Íd. Véase, además, Mapfre PRAICO, et als. v. E.L.A., supra.

[56] Exposición de Motivos de la Ley Núm. 119, supra. (2011 LPR 1761).

[57] Exposición de Motivos de la Ley Núm. 119, supra, pág. 1-2. (2011 LPR 1762 – 1763).

Nótese que la referida exposición de motivos consigna, incluso, la jurisprudencia sobre la que fundamenta su intención de instituir una confiscación estrictamente *in rem*. En ninguna parte, menciona alguna de las decisiones que este Tribunal emitió durante la vigencia de las legislaciones anteriores de confiscación. De esta manera, la política pública vigente establecida por la Asamblea Legislativa sobre confiscación se distancia de las respectivas interpretaciones judiciales formuladas en el pasado, particularmente en lo que respecta a condicionar la acción civil de confiscación al resultado del proceso penal.

De hecho, en la ponencia presentada por el Departamento de Justicia sobre el Proyecto del Senado 897 – eventual Ley Uniforme de Confiscaciones de 2011 – éste expresó "preocupación por definir la naturaleza *in rem* o civil de la confiscación".[58] Sobre este particular, indicó que "[a] efectos de evitar la más mínima confusión sobre los aspectos indicados, *es imprescindible introducir un lenguaje claro y preciso que establezca y mantenga distanciados los procesos criminales in personam y la confiscación a través de todo el texto de la ley*".[59] Precisamente, eso fue lo que hizo la Asamblea Legislativa

---

[58] Ponencia del Departamento de Justicia sobre el P. del S. 897 de 23 de julio de 2009, pág. 3.

[59] (Énfasis y subrayado nuestro). Íd.

en los Arts. 2, 8 y 15 de la Ley Núm. 119, supra, según expusimos.[60]

Así las cosas, no hay duda que en la legislación actual se estableció un proceso civil *in rem* verdaderamente independiente al proceso penal *in personam*, abandonando así la pasada intención legislativa de vincular ambos procesos. Ante ello, resulta pertinente analizar si verdaderamente el proceso de confiscación confeccionado por el Poder Legislativo tiene un fin punitivo o criminal como se mencionaba en el pasado. De concluir que, en efecto, estamos ante un proceso de confiscación de carácter punitivo dirigido a castigar al presunto autor del delito,

---

[60] Consistentemente, ésta ha sido la posición del Poder Ejecutivo sobre este particular. A modo ilustrativo, hallamos que en una medida legislativa anterior dirigida a establecer la Ley Uniforme de Confiscaciones de 2006, se incluyeron disposiciones idénticas a las incluidas en la Ley Uniforme de Confiscaciones de 2011 en cuanto a la independencia del proceso de confiscación de cualquier otro proceso penal. Véase, e.g., Art. 8 del P. de la C. 2696, 15ta Asamblea Legislativa, 3ra Sesión Ordinaria. A raíz de esta propuesta el entonces Secretario de Justicia comentó lo siguiente:

Los términos de esta medida reconocen las diferencias existentes entre el proceso de confiscación *in rem* y cualquier acción criminal, o de otra índole, que pueda proceder de los mismos hechos. *Se persigue que, por ejemplo, el Estado pueda proseguir legítimamente con una acción de confiscación contra una propiedad cuando existe prueba suficiente de que la misma ha sido utilizada en actividad delictiva, aun cuando el Estado instar una acción criminal porque no se ha identificado con la certeza suficiente al autor del delito. Nótese que el Estado debe establecer la ocurrencia de una actividad delictiva y su relación con la propiedad confiscada.*

La propuesta legislativa permite atender el absurdo jurídico que impide que el Estado pueda confiscar, por ejemplo, un automóvil con cristales ahumados cuando existe evidencia en su interior, tales como casquillos de bala, que lo vinculan directamente a la comisión de un delito. Nótese que, en este tipo de caso, el Estado conoce la ocurrencia de una actividad delictiva y del uso del vehículo en su consecución. No obstante, no necesariamente se ha identificado al autor del delito, toda vez que los cristales ahumados impiden su identificación.

*Ponencia del Departamento de Justicia de 24 de enero de 2006 sobre el P. de la C. 2696 ante la Comisión de lo Jurídico y Seguridad Pública de la Cámara de Representantes, pág. 4.*

el marco de acción de la Asamblea Legislativa para regular su aplicación y procedencia podría verse limitado por aspectos constitucionales aplicables bajo ciertas y limitadas circunstancias.

Sobre este particular, en <u>United States v. Ward</u>, 448 US 242 (1980), la Corte Suprema de los Estados Unidos elaboró un estándar de dos partes dirigido, precisamente, a contestar si un estatuto confiscatorio constituye en sí una medida punitiva de índole criminal o no. Al respecto, la Corte Suprema Federal expresó lo siguiente:

> Esta Corte a menudo ha reiterado que la interrogante sobre si una sanción es de índole civil o criminal es un asunto de interpretación estatutaria. Nuestra investigación en este respecto se ha realizado tradicionalmente en dos esferas. Primero, nos hemos dado a la tarea de determinar si el Congreso al establecer la sanción particular indicó expresa o implícitamente su preferencia por una etiqueta o la otra. Segundo, si el Congreso ha indicado la intención de establecer una sanción civil, hemos investigado más a fondo si el esquema estatutario era tan punitivo ya sea en su propósito o en su efecto como negar dicha intención. Respecto a esta última interrogante, hemos establecido que solo "la más clara evidencia" podría ser suficiente para establecer la inconstitucionalidad de una ley basado en dicho argumento.[61]

_____

[61] (Traducción nuestra). (Citas omitidas). <u>United States v. Ward</u>, supra, págs. 248-249. En términos propios de la Corte Suprema Federal, esta expresó específicamente lo siguiente:

> This Court has often stated that the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground."

En otros términos, la conclusión sobre si determinada sanción es verdaderamente de índole civil o penal debe estar precedida, en primer orden, de un análisis sobre si el Poder Legislativo consignó su intención, ya sea expresa o implícitamente, de caracterizar ésta como una civil o criminal. Es decir, este primer punto del análisis va dirigido específicamente a identificar la etiqueta "civil" o "criminal" que le dio o pretendió dar el Poder Legislativo a la sanción concerniente. Claro está, de concluir que, en efecto, el Poder Legislativo expresó su preferencia por una sanción criminal, resulta académico cualquier análisis posterior.

Empero, si de ese análisis surge la intención del Poder Legislativo de caracterizar determinado procedimiento como civil, procede entonces abordar el segundo punto del examen dirigido a auscultar si ésta es tan punitiva en su propósito o efecto que transforma en una sanción criminal lo que se pretendió imponer como una sanción civil.[62] En esta segunda parte del análisis, es necesario que la parte que formule tal alegación presente *"la más clara evidencia"* de que lo que el Poder Legislativo denominó como civil en realidad constituye una sanción de índole criminal.[63] De no

---

[62] Íd., pág. 249. (We turn then to consider whether Congress, despite its manifest intention to establish a civil, remedial mechanism, nevertheless provided for sanctions so punitive as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty.").

[63] (Traducción nuestra). Íd., pág. 249 ("In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground."); págs. 250-251 ("Nor are we persuaded by any of respondent's other arguments that he has offered the "clearest proof" that the penalty here in question is punitive in either purpose or effect."). Reiterado en United States v. One Assortment of 89 Firearms, 465 US 354, 366 (1984) ("Mulcahey has failed to establish by the "clearest proof" that

existir tal evidencia, lo único que procede es que el Tribunal confirme el carácter civil que le brindó o pretendió brindar, en primera instancia, el Poder Legislativo a la sanción concerniente.

Subsiguientemente, la Corte Suprema de Estados Unidos reafirmó este análisis en United States v. Ursery, 518 US 267 (1996), caso en el cual confirmó su dictamen de United States v. One Assortment of 89 Firearms, 465 US 354 (1984) a los efectos de que un estatuto confiscatorio civil no viola la Quinta Enmienda de la Constitución Federal a aplicarse a un individuo que ha sido absuelto o condenado mediante sentencia, siempre y cuando éste no sea punitivo en su naturaleza.[64] Para sostener tal carácter civil de la confiscación, el Tribunal Supremo de los Estados Unidos examinó los estatutos confiscatorios concernientes mediante el discutido análisis de dos partes. Respecto a la primera parte, la Corte sostuvo que era indudable que el Congreso tuvo la intención de establecer un proceso meramente civil.[65] Siendo así, se movió a la segunda parte del análisis y concluyó que existía "poca evidencia, y mucho menos la prueba más clara requerida" de que el proceso de confiscación establecido por el Congreso era tan punitivo

---

Congress has provided a sanction so punitive as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty.").

[64] United States v. Ursery, supra, pág. 292. ("We hold that these *in rem* civil forfeitures are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause.").

[65] Íd., págs. 288-290.

en su naturaleza o efecto que lo convertía en una sanción criminal.[66]

Para alcanzar tal conclusión, la Corte Suprema en United States v. Ursery, supra, destacó varios puntos importantes y pertinentes a nuestra legislación local. *Primero*, expresó el entendido de que las confiscaciones civiles *in rem* históricamente no constituyen un "castigo".[67] *Segundo*, resaltó que en los estatutos confiscatorios concernientes no se requería demostrar intención criminal en el uso de la cosa y aclaró que aun cuando éstos contienen una excepción de tercero inocente, ello de por sí no compele a la conclusión de que se desea castigar a una persona.[68] *Tercero*, señaló que si bien puede decirse que tales estatutos sirven un propósito disuasivo, la realidad es que tal objetivo es válido tanto para procesos de confiscación puramente civiles como para procesos criminales.[69] Finalmente, enfatizó que el solo hecho de que los estatutos confiscatorios estén atados o supeditados a una actividad criminal no es suficiente para establecer mediante "la más clara evidencia" que el proceso denominado como civil realmente es de carácter punitivo en su naturaleza o efecto.[70]

Al extrapolar tal análisis y escrutinio a nivel local con el objetivo de auscultar si el proceso de confiscación

---

[66] (Traducción nuestra). Íd., pág. 290.

[67] Íd., pág. 291.

[68] Íd., págs. 291-292.

[69] Íd., pág. 292.
[70] Íd.

establecido en la Ley Uniforme de Confiscaciones de 2011 constituye una sanción meramente civil o penal, no podemos alcanzar otra conclusión que no sea que ésta es *puramente civil y remediativa*. En primer lugar, según indicáramos, , no hay duda de que la Asamblea Legislativa aprobó la legislación vigente con la intención expresa de establecer un proceso *administrativo in rem* de estricto carácter civil e independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza. En ese sentido, y cónsono con la jurisprudencia federal sobre el particular, notamos que los demandantes en el caso de epígrafe no presentaron argumento alguno – mucho menos "la más clara evidencia" – que pusiera en posición a este Tribunal para determinar que, a pesar de la clara intención del Poder Legislativo de establecer un proceso estrictamente civil, éste debía ser cualificado como uno punitivo en su naturaleza o efecto.

En segundo lugar, – y a pesar de tal falla en la argumentación de los demandantes – la realidad es que un simple repaso de la legislación concerniente evidencia la inexistencia de "la más clara evidencia" que nos lleve a concluir que, en efecto, estamos ante un estatuto de carácter punitivo. Nótese que la ley vigente no requiere demostrar que hubo intención criminal por parte de la persona que utilizó la cosa de forma ilícita para que proceda la confiscación. Como explicáramos, en el proceso civil estatuido únicamente se requiere demostrar la conexión entre la propiedad confiscada y su uso en una

actividad prohibida por ley, independientemente de quién la utilizó o si tenía tal intención o no.

Además, aunque la legislación vigente podría permitir que se presente evidencie de la inocencia del dueño en ciertas circunstancias, esto, por sí solo, no es suficiente para atribuirle a la legislación un ánimo de castigar. Por último, la clara intención de la Asamblea Legislativa de disuadir la actividad criminal, según surge de la ley y de su historial, obligan a concluir que estamos ante una ley de naturaleza civil y remediativa. Como bien señalara la Corte Suprema de Estados Unidos, tal elemento disuasivo de la actividad criminal no es en sí suficiente para categorizar un proceso civil de confiscación como uno criminal.

## II

De los hechos reseñados en la Sentencia que antecede surge que el Estado confiscó un vehículo de motor porque presuntamente éste fue utilizado en una actividad delictiva. A raíz de estos mismos hechos, el Estado optó, además, por presentar cargos criminales en contra de las dos personas que ocupaban o poseían la propiedad confiscada al momento de la intervención. Sin embargo, ambos casos penales fueron desestimados porque el Ministerio Público no cumplió con el término reglamentario para la celebración de la vista preliminar y del juicio en su fondo. En ese escenario, surge la interrogante de qué sucede con la confiscación de la propiedad una vez la persona que presuntamente la utilizó para la comisión de un delito

obtiene un resultado favorable en el proceso penal, aun cuando éste no haya sido producto de una deliberación y adjudicación en los méritos.[71]

Tal cuadro fáctico no es un asunto novedoso para este Tribunal, ya que en el pasado emitimos varias opiniones que, precisamente, concernían a un conjunto de hechos igual o similar al que hoy consideramos. Como vimos, en ese entonces, y aún bajo las disposiciones de las derogadas Ley Uniforme de Confiscaciones de 1960 y 1988, este Tribunal resolvió que no podía sostenerse la confiscación civil de la propiedad en la medida que la persona imputada de delito por los mismos hechos que originaron la confiscación hubiese obtenido un dictamen favorable en la esfera criminal. Así las cosas, en el pasado se utilizó el resultado penal para disponer, incluso sumariamente, de una demanda civil de impugnación de confiscación.

Ahora bien, según reseñáramos, las pasadas determinaciones de este Tribunal estuvieron enmarcadas en lo que hasta el momento era la voluntad e intención expresada por la Asamblea Legislativa. Como observáramos, a pesar de que en la legislación de 1988 se reconocía el carácter *in rem* de las confiscaciones, el Poder Legislativo afirmativamente acogió el matiz *in personam* que por varias

---

[71] Cuando indicamos que el resultado favorable en lo penal no se obtuvo como parte de una determinación en los méritos, nos referimos a que en el proceso criminal nunca se dilucidó si, en efecto, la persona imputada cometió un delito o no. Esto porque la determinación a su favor se produjo como consecuencia de factores ajenos a la controversia principal sobre si incurrió en una conducta delictiva. Este es el caso, por ejemplo, cuando el imputado sale favorecido porque el Ministerio Público no cumple con los términos estatutarios de juicio rápido. La desestimación de los cargos que ese incumplimiento generalmente acarrea no significa que la persona no cometió delito. Simplemente, equivale a que el Ministerio Público incumplió con el proceso y los términos establecidos en las Reglas de Procedimiento Criminal.

décadas este Tribunal le otorgó al procedimiento in rem al condicionar la continuación del proceso de confiscación a los acontecimientos a nivel penal.[72]

Esto contrasta enormemente con la actual Ley Uniforme de Confiscaciones de 2011. En ésta, la Asamblea Legislativa, conociendo la interrelación que en el pasado este Tribunal estableció entre el proceso civil y el proceso penal, específicamente consignó su voluntad de diferenciar las acciones criminales dirigidas contra la persona de aquellas acciones confiscatorias a nivel civil dirigidas contra la propiedad en particular. Esta intención legislativa, según expuesto en la sección anterior, surge de cada parte del historial legislativo de la Ley Núm. 119, incluyendo del propio texto de la ley, de su exposición de motivos, de los informes de las respectivas comisiones legislativas, e incluso de las ponencias presentadas.[73]

Así, por ejemplo, el Art. 2 de la ley vigente claramente establece que en nuestra jurisdicción las confiscaciones serán de naturaleza *in rem* y, como consecuencia, independientes de cualquier otra acción de naturaleza penal, administrativa o de otra índole que pudiera llevarse en contra del dueño o del poseedor de los bienes ocupados.[74] Este principio de separabilidad e independencia fue reiterado más adelante por el Poder Legislativo al expresar literalmente – *y por primera vez*

---

[72] Véase, parte I, sección C de esta Opinión.

[73] Véase, parte I, sección D de esta Opinión.

[74] Véase, Art. 2 de la Ley Núm. 119, <u>supra</u>.

*como parte integral de la legislación en claro contraste con las leyes anteriores* - su intención de mantener la confiscación civil separada del procedimiento criminal y dirigida exclusivamente a dilucidar el involucramiento del bien confiscado en una actividad prohibida por ley.[75] De esta manera, no hay duda de que la Asamblea Legislativa pretendió distanciarse del desarrollo jurisprudencial bajo el cual el proceso civil de confiscación quedaba condicionado al resultado de la causa criminal contra el alegado autor del delito. Cónsono con ese claro distanciamiento, el Poder Legislativo modificó el enfoque y estableció explícitamente un procedimiento civil verdaderamente *in rem* cónsono a sus típicas características e independencia de cualquier otro proceso que pueda surgir del mismo conjunto de hechos.[76]

Bajo esas circunstancias, utilizar el resultado favorable obtenido por el imputado en el proceso penal para aplicar la doctrina de impedimento colateral por sentencia en el proceso civil de confiscación, como en efecto hizo el Tribunal de Primera Instancia y el panel apelativo cuyo dictamen hoy revisamos, es ir en contra de la voluntad legislativa diáfanamente expresada en la Ley Uniforme de Confiscaciones de 2011. Después de todo, eso fue lo que, precisamente, quiso evitar el legislador al disponer sobre la independencia de los procedimientos y reiterar una y

---

[75] Véase, Art. 8 de la Ley Núm. 119, supra.

[76] Véase, Parte I, Sección A de esta Opinión.

otra vez la naturaleza estrictamente *in rem* de la confiscación en nuestra jurisdicción.

Más allá de ese ejercicio válido de establecimiento de política pública, la realidad es que tal independencia entre el proceso civil de confiscación y la acción penal tiene perfecta lógica y congruencia jurídica.[77] Esto porque al final de todo se tratan de dos acciones judiciales que - si bien surgen de un mismo conjunto de hechos - responden a fines y cuestionamientos distintos bajo diferentes estándares de prueba. Por un lado, la acción civil de confiscación lo que busca es establecer mediante preponderancia de la prueba que la propiedad confiscada fue utilizada en una actividad prohibida por ley. Mientras que la acción penal busca establecer más allá de duda razonable que el imputado o acusado cometió un delito. En tales circunstancias, es jurídicamente sostenible no condicionar la acción civil de confiscación a lo que acontezca en la acción penal. Tan es así que nuestro ordenamiento jurídico actual no establece que la confiscación de una propiedad va a depender de la presentación de cargos criminales y mucho menos de la obtención de una sentencia condenatoria a nivel penal.[78]

---

[77] Así ha sido reconocido, incluso, por el Tribunal Supremo de los Estados Unidos en multiplicidad de casos aún vigentes. Véase, e.g., Bennis v. Michigan, 516 US 442, 452 (1996); United States v. One Assortment of 89 Firearms, 465 US 354 (1984); Calero-Toledo v. Pearson Yatch Leasing Co., 416 US 663 (1974); Goldmith-Grant Co. v. United States, 254 US 505 (1921).

[78] De hecho, esta posibilidad fue descartada, incluso, como parte de los debates suscitados durante la Convención Constituyente de Puerto Rico. III Diarios de Sesiones de la Convención Constituyente de Puerto Rico, 1569-1581 (1961). Cónsono con ello, puede haber ocasiones en que el Estado simplemente no tenga conocimiento de quién utilizó la propiedad en una actividad ilegal, pero como cuestión de hecho sí se sabe que fue

Ciertamente, y contrario a lo que sostienen los compañeros miembros de este Foro en sus respectivas opiniones de conformidad, estas distinciones no alteran nuestra bien concebida norma de que las confiscaciones no son favorecidas por los tribunales y, como consecuencia, los estatutos confiscatorios deben interpretarse restrictivamente.[79] Ahora bien, los tribunales estamos autorizados a interpretar una legislación cuando "esta no es clara o concluyente sobre un punto en particular".[80] De ese ser el caso, "debemos siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobar una legislación, de manera que nuestra interpretación asegure la efectividad de la intención legislativa".[81] De esta forma evitamos una interpretación contraria a esa intención y, por ende, una usurpación al Poder Legislativo.

---

utilizada con tales propósitos. Tal sería el caso, por ejemplo, de un automóvil abandonado con sustancias controladas en su interior. Ante tal hallazgo, no hay duda de que la propiedad fue empleada en la comisión de una actividad ilegal (almacén o transporte de sustancias controladas), pero por estar abandonada el Estado desconoce quién la utilizó para ello. ¿Supone ese desconocimiento del autor del delito un impedimento para que el Estado pueda confiscar la propiedad? No. Esto porque, como hemos explicado, bajo la modalidad civil de confiscación la pregunta no es quién utilizó la propiedad, sino si la propiedad, en efecto, fue utilizada en una actividad ilegal.

[79] Coop. Seg. Mult. v. E.L.A., supra, pág. 668; Del Toro Lugo v. E.L.A., supra, pág. 988; Suárez v. E.L.A., supra, pág. 64; Carlo v. Srio. de Justicia, supra, pág. 363; Pueblo v. González Cortes, 95 DPR 164, 168 (1967).

[80] Brau, Linares v. ELA, 190 DPR 315, 340 (2014); Rivera Fernández v. Mun. de Carolina, 190 DPR 196, 202 (2014); Consejo Titulares v. Gómez Estremera, 184 DPR 407 (2012), citando a Pueblo v. Ortega Santiago, 125 DPR 203, 214 (1990).

[81] Romero Barceló v. E.L.A., 169 DPR 460, 500-501 (2006); Rexach v. Ramírez Vélez, 162 DPR 130 (2004), citando a Pérez v. Mun. de Lares, 155 DPR 697, 706-707 (2001).

En el caso particular de la Ley Uniforme de Confiscaciones de 2011, la Asamblea Legislativa fue clara y categórica sobre su propósito de establecer como política pública una separación e independencia entre el proceso civil de confiscación y la causa penal que podría producirse a consecuencia de los mismos hechos. Teniendo ese propósito claro, ¿sería cónsono con el mismo utilizar el resultado favorable obtenido por el imputado para disponer y anular _automáticamente_ la confiscación? ¿Estaría conforme a la voluntad legislativa continuar el desarrollo jurisprudencial de este Tribunal en el cual la procedencia de la confiscación estaba condicionada a lo que aconteciera a nivel penal?

Indudablemente, no. Sería un contrasentido establecer por un lado que los procesos son independientes y, por el otro, interrelacionarlos de tal manera que lo que ocurra en uno predetermine el desenlace del otro. Ante tales circunstancias, _y en ausencia de un planteamiento constitucional válido y aplicable al escenario específico que hoy atendemos_, este Foro no debe alterar las normas estatutarias aplicables al caso ante nuestra consideración. Así, tenemos el deber de reafirmar el legítimo ejercicio de establecimiento de política pública promovido por la Asamblea Legislativa mediante la aprobación de la Ley Uniforme de Confiscaciones de 2011.

Si bien es cierto que la actual ley de confiscaciones no incluye una disposición sobre la doctrina de impedimento colateral por sentencia - tal y como se incluyó en su

momento mediante la derogada Ley Núm. 32-2000 - la realidad es que su aplicación a los casos que hoy atendemos es *completa y absolutamente incompatible* con varias de las disposiciones que sí fueron incluidas en la Ley.[82] En ese sentido, los tribunales no podemos utilizar nuestra función interpretativa para distanciarnos e invalidar el *contenido expreso y claro* de una ley bajo el pretexto de que el legislador no incluyó determinado lenguaje. Después de todo, nuestro deber no es juzgar cómo el legislador debió expresar su intención legislativa, sino auscultar si determinada interpretación y resultado es compatible con la voluntad del legislador reflejada en la letra de la ley. Conforme a ello, no hay duda de que validar la aplicación de la doctrina de impedimento colateral por sentencia, la aplicación de cualquier otra doctrina de índole estatutaria ocontinuar reconociendo presuntas excepciones a la independencia de que debe caracterizar el proceso *in rem* de confiscación o, incluso, pretender alcanzar un resultado basado en aspectos constitucionales no aplicables a los hechos particulares que evaluamos, constituiría un ejercicio impropio de *legislación judicial* en la medida que ignora y menoscaba las disposiciones incluidas en la Ley Uniforme de Confiscaciones de 2011.[83]

---

[82] Véase, Arts. 2, 8 y 15 de la Ley Núm. 119, supra, los cuales, como discutimos en secciones anteriores, dejan claro la voluntad de la Asamblea Legislativa de establecer un proceso civil de confiscación independiente de lo acontecido a nivel penal. Esto, indudablemente, no brinda espacio para otra interpretación estatutaria que no sea la inaplicabilidad de la doctrina de impedimento colateral por sentencia o de cualquier otra doctrina que condicione la continuación de la confiscación al resultado de otro procedimiento.
[83] Ello sin mencionar las posibles incongruencias jurídicas que sustantivamente supone la aplicabilidad de esta doctrina en el contexto

Por todo lo anterior, este Tribunal debió concluir que los tribunales no pueden disponer de la acción civil de confiscación basados _exclusivamente_ en el resultado obtenido por el imputado a nivel penal, _mucho menos cuando tal determinación se produce como consecuencia de un incumplimiento con los términos establecidos en las Reglas de Procedimiento Criminal, fundamento ajeno a los méritos del caso penal en sí_. Conforme a las disposiciones de la Ley Uniforme de Confiscaciones de 2011, la procedencia de la confiscación debe ser adjudicada a nivel civil por preponderancia de la prueba y en completa independencia de lo que haya acontecido a nivel penal. Así que, en ausencia de algún otro planteamiento procedente en derecho, los foros primarios deberían dilucidar las demandas civiles de impugnación de confiscación en sus méritos, conforme al proceso delineado por la Asamblea Legislativa en la legislación vigente.

Claro está, no siempre la determinación del foro primario en una demanda de impugnación de confiscación estará basada en su adjudicación en los méritos. En ese sentido, los tribunales podrían resolver este tipo de pleito utilizando todos los mecanismos disponibles bajo nuestras Reglas de Procedimiento Civil, incluso disponer del mismo por la vía sumaria, si así procede en derecho. Ahora bien, la disposición del recurso no puede descansar en el mero resultado favorable obtenido por el imputado a

---

de un proceso civil de confiscación basado en lo acontecido en un proceso de índole penal, el cual, en muchas ocasiones, ni tan siquiera concluye mediante una _sentencia_ luego de un proceso adjudicativo en sus méritos.

nivel penal, como ocurría en el pasado bajo la derogada Ley Uniforme de Confiscaciones de 1988. Si la parte demandante interesa obtener un dictamen sumario, por ejemplo, deberá entonces ubicar en posición al tribunal sobre su procedencia, pero su petición no puede basarse exclusivamente en la obtención de un dictamen favorable en la causa criminal.

### III

Conforme a esta normativa, y dado a que este Tribunal se encuentra igualmente dividido en cuanto a sus votos y ante la confirmación del dictamen del Tribunal de Apelaciones que ello supone, no me resta más que disentir.

Edgardo Rivera García
Juez Asociado